IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DARRELL LAW,**

      Plaintiff,

v.                                               Civil Action No. 3:06cv96
                                                  (Judge Broadwater)

**ZELDA WESLEY, Assistant United States
Attorney; RITA VALDRINI, Acting United
States Attorney; THOMAS E. JOHNSTON,
Former United States Attorney;[1] JOHN S. KAULL,
United States Magistrate Judge; IRENE M. KEELEY,
United States District Judge; JO JO ANTOLOCK,
WV State Police;**

      **Defendants.**

## REPORT AND RECOMMENDATION

On September 18, 2006, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants. On October 12, 2006, Plaintiff filed exhibits in support of his complaint. On October 16, 2006, the Court received a letter from Plaintiff that the undersigned deemed an *ex parte* communication and directed the Clerk to file. Plaintiff was granted permission to proceed as a pauper on October 30, 2006. This case is before the Court for an initial review and report and recommendation pursuant to LR PL P 83.02, et seq., and 28 U.S.C. §§ 1915(e) and 1915A.

## I. The Complaint

According to the complaint, Plaintiff was arrested on January 26, 2006 in Marion County, West Virginia for allegedly distributing crack cocaine on two separate occasions. Plaintiff was released on bail on February 17, 2006. On February 28, 2006, Plaintiff met with

---

[1] Thomas E. Johnston is now a District Judge in the Southern District of West Virginia.

his appointed counsel, David Andersen ("Andersen"), who was appointed to represent Plaintiff in a domestic battery case in the Circuit Court of Marion County, West Virginia. At this meeting, Andersen informed Plaintiff that he had been contacted by an Assistant United States Attorney, Zelda Wesley ("Wesley").

Andersen informed Plaintiff that Wesley had contacted him regarding possible federal drug charges stemming from Plaintiff's arrest on January 26, 2006. Andersen further informed Plaintiff that Wesley "wanted him to plead guilty to the pre-indictment information regarding the charges for distribution of crack cocaine and also, requiring [Plaintiff] to give testimony at a Grand Jury hearing and fully cooperate with any U.S. investigation." Complaint at 4. Andersen also informed Plaintiff that Wesley stated that "she would make [his] life very difficult and would 'dig up as many buys' on [him] as she could and 'put [Plaintiff] in prison for a long time, if [he] chose to play hard ball.'" Id. At the time the offer was made, Plaintiff was given three days to make a decision. However, because the lab reports were not back on the substance Plaintiff had allegedly distributed, he chose not to plead guilty at that time.

On or about March 7, 2006, Plaintiff and eight others were indicted by a grand jury for conspiracy to distribute crack cocaine between the Spring of 2005 until January 25, 2006. Plaintiff was also indicted on two separate counts of distributing crack cocaine on November 18, 2005. Plaintiff states that the only tie between himself and the other defendants was the same confidential informant. Moreover, Plaintiff suggests that the parties were only incidentally involved due to their drug addictions and attempts to purchase drugs to feed that addiction.

Plaintiff asserts that he was arraigned on the charges on July 5, 2006 and was ordered to be detained until trial because he was deemed a threat to the community by the Honorable John

S. Kaull, United States Magistrate Judge. Plaintiff further asserts that on September 5, 2006, he was also deemed a flight risk due to his past criminal history by the Honorable Irene M. Keeley, United States District Judge.

As relief, Plaintiff seeks release from his "state of incarceration." Complaint at 5. In addition, Plaintiff asks to be financially compensated for each day spent in the Regional Jail System and seeks $1000 a day for each day he was incarcerated in violation of the United States Code. Plaintiff also seeks $500 - $1000 for being housed on the floor or placed in disciplinary lock-up while being detained on the federal drug charges. Finally, Plaintiff seeks to have Zelda Wesley, Rita Valdrini, and Thomas Johnston removed from their current positions. Plaintiff also makes a request that the money currently "being granted to the drug task force, the United States Attorney's Office, and W.V. State Police Office, be cut in half and granted to the West Va. Legislature for drug laws amendment and drug programs." Complaint at 6.

## II. Plaintiffs' Exhibits

On October 12, 2006, the Court received a letter from the Plaintiff requesting that certain "pink slips" be forwarded to the assigned district judge to be used as evidence in this case and/or to be filed for later reference. The letter and "pink slips" were construed as exhibits in support of the complaint and docketed accordingly. The "pink slips" are what appears to be copies of administrative requests that Plaintiff has filed with the Regional Jail Authority. Unfortunately, the copies of Plaintiff's administrative requests are "carbon copies" on pink paper that are so light that the actual content of the slips is unreadable.

## III. Plaintiff's Ex Parte Communication

On October 16, 2006, the undersigned received a letter from Plaintiff in which he

requests that his case be taken under advisement as soon as possible. In support of this request, Plaintiff states that the instant case is not a typical prisoner civil rights case and that the outcome of this case could "very well affect legal reform of drug laws within the State of West Virginia." Plaintiff further suggests that the Court has a bias toward a "particular group of people" and that he feels outnumbered and defeated whenever he steps in the courtroom. Plaintiff asserts that he is being detained merely because he failed to accept a plea bargain and that the unwritten rule is that he is "guilty until proven innocent." Thus, Plaintiff requests the Court "seriously look into this matter and intervene as soon as possible" because he has a family which needs him at home.

### IV. Standard of Review

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. § 1915(e).

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[2]

---

[2] Id. at 327.

4

or when the claims rely on factual allegations which are "clearly baseless." <u>Denton v. Hernandez</u>, 504 U.S. 25, 32 (1992).

## V. Analysis

### A. Sufficiency of the Claims

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added) "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." <u>Migdal v. Rowe Price-Fleming Int'l, Inc.</u>, 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

In the instant case, Plaintiff makes no specific allegations of a violation of any constitutional right against any of the named defendants. Instead, Plaintiff merely states that he would like to be compensated for several violations of the United States Codes. However, Plaintiff does not cite the specific code provisions that he believes is being violated or how each defendant specifically violated those codes. Accordingly, Plaintiffs' claims are insufficiently pled, the complaint fails to state a claim for which relief can be granted, and the complaint should be dismissed. <u>See</u> <u>Weller v. Dept. of Social Servs.</u>, 901 F.2d 387 (4th Cir. 1990) (dismissal proper where there were no allegations against defendants).

However, reading Plaintiff's claims liberally, it appears as if Plaintiff may be alleging

5

that his constitutional rights were violated when Wesley, Valdrini and Johnston made the decision to file charges against him, when Magistrate Judge Kaull determined that he was a danger to the community, when Judge Keeley determined that he was a flight risk, and when he was forced to sleep on the floor or was placed in lock-up while incarcerated at the regional jail. Thus, to the extent that Plaintiff raises these claims, the undersigned makes the following recommendations.

**B. Wesley, Valdrini and Johnston**

Prosecuting attorneys are absolutely immune from individual liability when performing prosecutorial functions. Imbler v. Pachtman, 424 U.S. 409 (1976); Ostrzenski v. Seigel, 177 F.3d 245 (4th Cir. 1999). For instance, prosecuting attorneys are entitled to immunity when deciding whether to prosecute, even if the decision to prosecute is malicious. Imbler, 424 U.S. at 427; see also Wadkins v. Arnold, 214 F.3d 535 (4th Cir. 2000). There is an exception to the absolute prosecutorial immunity rule, however, if the prosecuting attorney acts in the role of administrator or investigative officer, rather than as a prosecutor. Imbler, 424 U.S. at 430. Thus, when a court determines whether a prosecuting attorney is entitled to absolute immunity, it must examine the type of activity performed, not the identity of the individual who performed it. Forrester v. White, 484 U.S. 219, 229 (1988).

At best, Plaintiff has alleged that Wesley, Valdrini and Johnston should not have filed charges against him or that Wesley acted maliciously in doing so. However, such claims clearly involve prosecutorial discretion and/or occurred during the performance of the defendants prosecutorial functions. Consequently, Wesley, Valdrini, and Johnston are entitled to absolute prosecutorial immunity.

## C. Judge Keeley and Magistrate Judge Kaull

It is obvious that Plaintiff is displeased with the decisions made by Magistrate Judge Kaull and Judge Keeley regarding his detention prior to trial. However, the United States Supreme Court has noted:

> It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision making but to intimidation.

Pierson v. Ray, 386 U.S. 547,554 (1967).

Thus, the Supreme Court has held that judges are absolutely immune from suit and monetary damages in exercising their judicial jurisdiction. Id.; Mireles v. Waco, 502 U.S. 9, 11 (1991). Magistrates also are entitled to absolute immunity for acts performed in their judicial capacity. King v. Myers, 973 F.2d 354 (4th Cir. 1992). However, a judge who acts without jurisdiction, or who has not performed a judicial act, has no absolute judicial immunity. Forrester v. White, 484 U.S. 219 (1988); Stump v. Sparkman, 435 U.S. 349, 356 (1978), *r'hrg denied,* 436 U.S. 951 (1978).

In determining whether an act is a "judicial act," the court must consider "whether [the act] is [a] function normally performed by a judge" and "whether [the parties] dealt with the judge in his judicial capacity." Stump v. Sparkman, 435 U.S. at 362. In this case, both Judge Keeley and Magistrate Judge Kaull were clearly acting in their judicial capacities. Therefore, both of these defendants are immune from suit and should be dismissed from this case.

## D. Jo Jo Antolock

Although named as a defendant in this case, Plaintiff makes absolutely no allegations

against Jo Jo Antolock ("Antolock"). At best, Plaintiff identifies Antolock as an employee of the West Virginia State Police. However, even assuming that Antolock was involved in Plaintiff's arrest, Plaintiff makes no allegations concerning the legality of that arrest nor could he properly raise such issues in a civil rights complaint at this time. See Heck v. Humphrey, 512 U.S. 477 (1994); Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Accordingly, Antolock should be dismissed without prejudice as a defendant in this case.

E. **Plaintiffs' Conditions of Confinement Claims**

In the complaint, Plaintiff asserts that while he has been incarcerated in the regional jail system, he has been housed on the floor or placed in disciplinary lock-down. While it is possible that these issues may give rise to a violation of Plaintiff's constitutional rights, Plaintiff names no defendant actually involved in these alleged violations, nor does Plaintiff provide the Court with any factual support for these claims. Accordingly, Plaintiff's claims regarding the conditions of his confinement at the regional jail should be dismissed without prejudice as insufficiently pled.

## VI. Recommendation

For the reasons set forth in this Order, it is recommended that Plaintiff's civil rights complaint be **DISMISSED with prejudice** against Zelda Wesley, Rita R. Valdrini, Thomas E. Johnston, Magistrate Judge John S. Kaull and Judge Irene M. Keeley. Further, the undersigned recommends that Plaintiff's conditions of confinement claims and claims against Jo Jo Antolock be **DISMISSED without prejudice** as insufficiently pled.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the

recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable W. Craig Broadwater, Chief United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

    The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff and any counsel of record.

    DATED: October 31, 2006.

                                            /s/ James E. Seibert
                                            JAMES E. SEIBERT
                                            UNITED STATES MAGISTRATE JUDGE